**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ANYTHING TO RENT LEASE          :          No. 4:16-cv-00895
WHOLESALE, INC., CARL SCHULTZ :
and CARL SCHULTZ d/b/a          :          (Judge Brann)
VALLEY BEVERAGE,                :
                               :
          Plaintiffs,           :
                               :
   v.                           :
                               :
HUGHESVILLE BOROUGH and         :
HUGHESVILLE BOROUGH             :
AUTHORITY,                      :
                               :
          Defendants.           :

**MEMORANDUM**

**February 24, 2017**

## I.     BACKGROUND

Plaintiff Carl Schultz owns and operates the retail establishment known as

Valley Beverage, located at 4919 Route 220 Highway in Hughesville, Lycoming

County, Pennsylvania. Pl.'s Amd. Compl., ECF No. 5, at ¶ 3. Plaintiff Anything

To Rent Lease Wholesale, Inc., is a Pennsylvania business headquartered at 4919

Route 220 Highway. *Id.* at ¶ 1. It also owns the parcel of land located at 5054–

5058 Route 220 Highway, Hughesville. *Id.* at ¶ 4.

During the fall of 2013, Schultz observed erosion and sink holes on the

property located at 4919 Route 220 Highway. *Id.* at ¶ 7. He immediately contacted

1

the Defendants and advised them of the apparent problems. *Id.* at ¶ 8. Schultz also informed the Defendants that he believed certain of the Borough's water lines were leaking and causing erosion on the property. *Id.* In addition, he requested that the Borough investigate the cause of the erosion. *Id.* at ¶ 10.

According to Schultz, his requests were intentionally ignored. *Id.* at ¶ 11. Shortly after July 2014, the Borough discovered a substantial leak in their water carriage system, which leak was later traced in part to the subject property. *Id.* at ¶¶ 18–20. When he confronted a Borough representative about their inaction, Schultz was allegedly told "that the Defendants ignored his complaint because it was him making it." *Id.* at ¶ 23. Schultz suspected that this was retaliation for another lawsuit he had previously filed against the Borough. *Id.* at ¶ 27.

The affected property served as the site of a warehouse that held stock for the Valley Beverage business. *Id.* at ¶ 9. According to Schultz, as a result of the water main leak, the ground beneath the warehouse was undermined, the building lost its structural integrity, and it has since been deemed uninsurable or a high insurance risk. *Id.* at ¶¶ 31–35.

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading," *In re Hydrogen Peroxide*

*Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)), and "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)). This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke*, 490 U.S. at 327.

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions. *See* Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012). In two landmark decisions, *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules." Wasserman, *supra*, at 319–20. More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard. *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S.

41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted). Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]." *Twombly*, 550 U.S. at 556.

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (internal citations omitted). "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

## III.   ANALYSIS

### A.   The Motion To Dismiss Is Denied As To Plaintiffs' Negligence Claims.

The thrust of Plaintiffs' negligence claims is that the Defendants failed to

investigate and remedy the subject leak, despite having been on notice of

symptoms of such leaking as early as the fall of 2013. Plaintiffs offer the following

factual averments in support:

> 7.    On or about fall of 2013, Plaintiff Carl Schultz observed erosion/sink holes on his property located at 4919 Route 220 Highway, Hughesville, Pennsylvania.
>
> 8.    Plaintiff Schultz immediately contacted the Hughesville Borough Authority and advised them of the water erosion/sink holes on his property and that he believed Defendants' waterlines were leaking thus causing erosion to the ground beneath Plaintiffs' warehouse located on the property
>
> . . .
>
> 10.    Plaintiff Schultz requested Defendants to investigate the water erosion/sink holes on his property as he believed it was a direct result of a leak in the Defendants' water main located along Route 220 Highway.
>
> 11.    Defendants intentionally disregarded Plaintiff Schultz's warnings and did not investigate the possible leak in their water main.
>
> . . .
>
> 13.    The Defendants had a duty to Plaintiff to investigate the warning as it was reasonably foreseeable that a leak in the water main could cause a dangerous condition and damage to the Plaintiff's property in and around such a leak.

14.    The Defendants failed to take action in sufficient time to prevent such a dangerous condition and damage to Plaintiff's property.

15.    After the request was ignored for several months, on July 17, 2014 Plaintiff Schultz sent a letter to Defendant Authority requesting an investigation of the water mains at or near his property.

16.    The Defendants had knowledge of verbal and written complaints indicating the line may be leaking and none of the officials, officers or employees of the Defendant Authority took action to rectify or investigate the verbal and written complaints, and such failure represents negligence as set forth more specifically below.

17.    Plaintiff Carl Schultz was notified and advised by Defendants that there was no leak of the water main line.

18.    Months later, Defendant Hughesville Borough Authority began to realize a significant water loss in their water system.

19.    A leak in the main water line was then discovered at or near Plaintiffs' property located along Route 220 Highway.

. . .

31.    As a direct result of Defendants disregard of Plaintiffs' warnings severe damage has been done to Plaintiffs' land and warehouse from Defendants' water main leak.

32.    As a result of the water main leak, the ground beneath Plaintiff Valley Beverage's warehouse has been undermined resulting in severe damage to the structural integrity of the building.

33.    Had the Defendants investigated when Plaintiff Schultz first warned Defendants that there was a leak, the damage to Plaintiffs' land and warehouse could have been avoided.

34.    Further, Plaintiff's warehouse has been deemed uninsurable and/or a high risk as a result of the loss of structural integrity of the building.

35.    Plaintiff Schultz has incurred a staggering increase in his insurance rates as a direct result.

"Under Pennsylvania law, a Plaintiff bringing a cause of action for negligence must allege 'the four basic elements of duty, breach, causation, and damages.'" *Perez v. Great Wolf Lodge of the Poconos LLC*, 200 F. Supp. 3d 471 (M.D. Pa. 2016) (Mariani, J.) (quoting *Loughran v. The Phillies*, 888 A.2d 872, 874 (Pa.Super.2005)). The factual allegations in Plaintiffs' amended complaint state a plausible claim to relief under this framework. According to Plaintiffs, they were owed a duty by the Defendants to be allowed to operate the subject property free of underground seepage. Moreover, Plaintiffs suggest that the Defendants were on notice of suspected problems but nevertheless failed to act. But for this inaction, the Plaintiffs suggest that they would not have sustained as extensive property and pecuniary damages.

The prime counterargument is that the Defendants are entitled to immunity under Pennsylvania's Political Subdivisions Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 *et. seq.* Although that act typically insulates municipalities from tort liability, sufficient factual matter has been offered to plausibly suggest that a statutory exemption applies. Specifically, under § 8542(b) of that act, municipalities may still be held liable for "utility services facilities":

> (5) Utility service facilities.—A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to

recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

Applying this example, the Commonwealth Court of Pennsylvania has permitted a municipality to face suit where a faulty water meter caused excessive leaking in the basement of a commercial establishment, *Primiano v. City of Philadelphia*, 739 A.2d 1172, 1173 (Pa. Commw. Ct. 1999), and where ground water from a broken sewer pipe caused a gravel landslide. *Allegheny Cty. v. Dominijanni*, 531 A.2d 562, 563 (1987). *See also Bergdoll v. York Water Co.*, No. 2169 C.D. 2006, 2008 WL 9403180, at *6 (Pa. Commw. Ct. 2008) (quoting *Pennsylvania Liquor Control Bd. v. City of Philadelphia*, 333 A.2d 497, 498 (1975) ("The plaintiff may, for instance, recover if damages have resulted from the defendant's faulty or negligent construction of the line, from the defendant's failure to repair a leaking line after actual or constructive notice, or from the defendant's failure to conduct reasonably careful inspections from time to time.")). Accordingly, Plaintiff has alleged sufficient factual matter to permit his negligence claim to survive the motion to dismiss stage.

**B.      The Motion To Dismiss Is Denied As To Plaintiffs' Trespass Claims.**

Defendants contend that each of Plaintiffs' claims for trespass must be dismissed because none of their employees or agents intentionally entered the subject premises without permission. That is too restrictive a view of trespass law. "At common law the owner of the surface owned downward to the center of the earth and upward to the heavens, a principle expressed by the maxim '*cujus est solum ejus est usque ad coelom.*'" *Reynolds v. Wilson*, 67 Pa. D. & C. 286, 289–90 (Com. Pl. 1949). As such, courts in this Commonwealth have recognized that "[a]ny physical entry upon the surface of the land is a trespass, whether it be by walking upon it, flooding it with water, casting objects upon it, or otherwise," *Jones v. Wagner*, 624 A.2d 166, 169 (1993) (quoting Prosser, TORTS (5th ed., 1984)). State courts have even debated whether such flooding constitutes a "continuing" trespass. *See Graybill v. Providence Twp.*, 140 Pa. Cmwlth. 505, 509, 593 A.2d 1314, 1316 (1991), *aff'd*, 533 Pa. 61, 618 A.2d 392 (1993).

A prime example of a trespass of this character was recounted in *Deibert v. Pennsylvania Turnpike Com'n*, 2010 WL 6610724, 18 Pa.D.&C.5th 177, 215 (Com. Pl. 2010). In *Deibert*, the Court of Common Pleas of Lehigh County found that a township could be held liable for flooding damages that resulted from its water management system. It wrote as follows:

As to the two-part analysis of § 8542(a), first, it is clear that, under the facts presented by this case, damages would be recoverable under a trespass theory if the injury were caused by a person not having a defense under § 8541. And second, the injury was caused by the negligent acts of LMT, namely the storm water management system it owns and possesses is causing water to unlawfully trespass onto the Plaintiffs' property.  As the real estate exception under §542(b)(3) of the PSTCA applies to LMT under the circumstances presented by this case, LMT is not immune from suit in this case on the Plaintiffs' action in trespass.

*Id.*

As Plaintiff argues, not only does this analysis apply to its claim for trespass, but it also suggests that a second statutory exception to the Pennsylvania's Political Subdivisions Tort Claims Act may be triggered. In particular, § 8542(b)(3)(ii) exempts from immunity tortious conduct arising out of "[t]he care, custody or control of real property in the possession of the local agency," including "facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way." That exception also appears to apply, and therefore, Plaintiffs' trespass claims will survive the motion to dismiss stage.

### C.   The Motion To Dismiss Is Granted Without Prejudice As To Plaintiffs' Punitive Damages Claims.

The parties agree that Plaintiffs' punitive damages claims should be dismissed because the Defendants are governmental entities. As such, those claims are dismissed with leave to refile in the event that any individual defendants are added later.

**D.     The Motion To Dismiss Is Granted With Prejudice As To Plaintiff's Federal Equal Protection Claims.**

Plaintiffs bring a series of federal equal protection claims pursuant to 42 U.S.C. § 1983. "Setting aside the availability of immunity, the basic cause of action requires that a § 1983 plaintiff prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (Smith, J.).

Moreover, under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). "Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." *Id.*

Plaintiffs' constitutional counts thus fail on two distinct grounds: they do not allege an official policy under *Monell*, and they do not state a viable claim to relief under the equal protection clause. As to the first deficiency, the policy requirement set forth in Monell stems from the fact that a governmental entity "is not liable under the doctrine of *respondeat superior*" for constitutional claims. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (Rosenn, J.). As the *Beck* court elaborated, a government policy or custom under *Monell* must be proven in one of two ways:

> Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law.

*Id.* at 1480 (internal citations and quotations marks omitted).

Plaintiffs do not allege facts sufficient to satisfy this standard. Instead, the amended complaint merely avers that the decision to forego an inspection of the subject water lines may have been a one-off dispute between the players in this litigation. Singular disputes between parties who may have shared a rocky relationship in the past is not enough to satisfy the *Monell's* policy requirement, which serves "as a means of determining which acts by municipal employees are properly attributed to the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139 n.3 (1988). *See, e.g.*, *Tuttle*, 471 U.S. at 824 ("But where the policy relied

13

upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.") (internal footnote omitted). Neither are inferences or suspicions of a governmental policy sufficient. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'")). As such, because they failed to plead sufficient facts, Plaintiffs have not plausibly shown the existence of a policy or custom that could entitle them to relief under *Monell*.

Second, as a substantive matter, Plaintiffs' "class of one" equal protection theory is also faulty. The Fourteenth Amendment to the United States Constitution provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Its purpose is "to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352, (1918). Where a litigant advances a "class of one" theory, as Plaintiffs do here, they must prove they were "intentionally treated differently

from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In particular, Plaintiffs in this case do not allege the existence of any other similarly situated individuals who were treated more favorably. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) ("Hill's claim must fail because he does not allege the existence of similarly situated individuals."). In fact, no averments in Plaintiffs' amended complaint indicate that this litigation stems from anything other than a discrete incident. That incident sounds in negligence and perhaps in trespass, but not in that of a constitutional violation.

Along those same lines, Plaintiffs provide no factual basis to believe that any difference in treatment, even if it existed, was irrational in the constitutional sense. *Levenstein v. Salafsky*, 414 F.3d 767, 776 (7th Cir. 2005) (Wood, J.) ("After the plaintiff shows the differential treatment, he must then prove that it flows from an illegitimate animus, not from inadvertence or some kind of permissible governmental classification."). Accordingly, for this second, independent reason, Plaintiffs' constitutional claims will be dismissed.

Leave to amend will be denied as to Plaintiffs' constitutional claims. Federal Rule of Civil Procedure 15 sets forth the mechanisms for amending a pleading prior to trial. Section 15(a)(1) applies to amendments as a matter of course. Amendment as a matter of course is inapplicable here, because Plaintiff elected not

to make such an amendment within the two time periods provided for in that section. Section 15(a)(2), entitled "Other Amendments," explains that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

The Third Circuit has "previously discussed when a court may deny leave to amend under Rule 15(a)(2)." *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008). In *Shane v. Faver*, for example, then Circuit Judge Samuel A. Alito, Jr. stated that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (Alito, J.). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane*, 213 F.3d at 115. "In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

"Moreover, substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted." *Id.* "Specifically, we have considered whether allowing an amendment would

result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

"The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court." *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518 (3d Cir. 1988). "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment." *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (quoting *Foman*, 371 U.S. at 182). For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (citing 6 Wright, Miller, & Kane, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 1487).

It is clear that subsequent amendment here would be futile. In fact, Plaintiffs have already taken advantage of the opportunity to amend their complaint once in response to those same arguments advanced in Defendants' first motion to dismiss. Consequently, I agree with the Defendants that the amended complaint does little if anything to address these arguments. As a result, I also recognize that the Defendants would face substantial prejudice were they required to brief yet another motion to dismiss involving the dismissed constitutional claims. Thus, Plaintiffs will not be granted leave to amend those averments.

In my view, pleading the above constitutional claims accomplished little more than delaying Plaintiffs' access to justice, if such justice is even due. Over the pendency of this motion to dismiss, this Court gave just as thorough review to each and every one of Plaintiffs' claims as it would in any other federal matter with legitimate federal claims that have rightly appeared before this Court—for instance, complaints seeking constitutional relief for Syrian students facing expulsion from public universities and deportation from this country without adequate due process. With all due respect to the Plaintiffs here, their claims as pled are concerning and may even be meritorious, but they do not rise to the level of a constitutional affliction. For the above reasons, the claims are dismissed with prejudice.

### E.     The Matter Is Remanded To State Court.

The issue of remand of state law claims is governed by 28 U.S.C. § 1367(c)(3), which provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim if . . . the district court has dismissed all claims over which it has original jurisdiction." "Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Beckinger v. Twp. of Elizabeth*, 434 F. App'x 164, 170

(3d Cir. 2011) (Vanaskie, J.) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995).

Having dismissed Plaintiffs' constitutional claims, no federal anchor claims remain. Moreover, diversity of citizenship is not present. Therefore, no independent basis for original jurisdiction exists. Moreover, concerns about judicial economy and expertise also militate for remand. I note that the Court of Common Pleas is uniquely positioned to interpret and apply state law negligence and trespass principles—a body of law with which that court is undoubtedly more familiar than a federal tribunal. Moreover, given their accountability to the electorate, state court judges are well suited to interpret the limits of sovereign immunity in this Commonwealth. Accordingly, the matter is remanded to the Court of Common Pleas of Lycoming County.

## IV.   CONCLUSION

Consistent with the foregoing reasoning, Defendants' motion to dismiss is granted in part and denied in part. The matter is remanded to state court.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge